1           IN THE SUPERIOR COURT OF FULTON COUNTY
                STATE OF GEORGIA

2                   - - -

3

4

5

6  WILLIAM ROBINSON           )
          Applicant      )

7                     )   MAGISTRATE WARRANT
                     )   APPLICATION 16MAGC-03956

8    vs.               )

9                     )

10  RAFFERTY FUQUA          )

11 —————————————————————————————

12

13

14

15

16        Transcript of Proceedings, application for a
     warrant held in open court before the Honorable

17     Craig L. Schwall in the Superior Court of Fulton
     County, 185 Central Avenue, Courtroom 5-E, Atlanta,

18     Georgia on Friday, December 2, 2016.

19

20

21

22

23

24           Linda E. Haque, CCR-B-996
           Official Court Reporter

25       185 Central Avenue, Room T-5905
         Atlanta, Georgia  30303

1                    P R O C E E D I N G S

2                  Friday, December 2, 2016

3             THE COURT: All right.  On the Rafferty Fuqua

4      case.  Who is here on that?

5             MR. FUQUA:   Here.

6             APPLICANT ROBINSON:   Here.

7             THE COURT:  Is somebody here from -- are you

8      from OPS, sir?

9             MR. FUQUA: I'm Rafferty Fuqua, sir.

10            THE COURT: Is somebody here from OPS?

11            PERSON IN AUDIENCE: Yes, sir.

12            THE COURT: We were waiting to see about your

13     report.  Do you all have a report?

14            PERSON IN AUDIENCE: We don't have a completed

15     investigation, if that's your question, we don't have a

16     completed --

17            THE COURT: Have you made progress?

18            PERSON IN AUDIENCE: We have, Your Honor.

19          The case was so large that we had to break it up

20     into two pieces.  The first part is completed.  The

21     second phase is still open.

22            THE COURT: What was the first phase that was

23     completed?

24            PERSON IN AUDIENCE: The first phase is when he

25     initially entered the jail, his conduct at that time was

—— 2 ——

1    met with some -- his conduct was adjusted at that time.

2    That was the first part of the investigation. He came in.

3    He was a little hostile, and we dealt with that part of

4    it.

5          THE COURT:  What is the -- at some point

6    thoughts were that the Feds would be investigating.

7          PERSON IN AUDIENCE: I'm not sure what that is,

8    Your Honor.

9          THE COURT: Wait a minute.  And so what's the

10   second part of the investigation?

11         PERSON IN AUDIENCE: It's his encounter with

12   the people he is accusing.

13         THE COURT: Yes, sir, what do you want to say?

14         APPLICANT ROBINSON:  He identified, the one

15   with the black gun, he identified himself as Fuqua.  The

16   one with the red on, he was making jokes like that,

17   saying say Fuqua.  Him right here with the red on, he

18   was the light skinned.  These are the two right here.

19   The other guy that was here the last time, you had on

20   Fuqua's name tag, the same name tag.  You.  Him right

21   there in the middle, the one with the black.  That's the

22   one that kicked me in my face.  That's the one that

23   tased me. You think I wouldn't get to the bottom of it,

24   for real.

25         THE COURT: Wait a minute.

1          APPLICANT ROBINSON:  Him, too, that's the one,

2     see the one on the end, that's the one that said, hey,

3     say Fuqua.  He was making a joke of it when my teeth hit

4     the floor.  The one in the red, him there.

5          THE COURT: Which person are you talking about,

6     the gentleman sitting down?

7          APPLICANT ROBINSON:  Stand up.  Say Fuqua.

8     You know who I'm talking to.  Stand up, sir.  You, stand

9     up, sir. Him right there.

10          THE COURT: And what is your name, sir?  Please

11     stand up.  Is this the gentlemen you're talking about?

12          APPLICANT ROBINSON: Yes, sir.  That's the one

13     that was laughing and saying, say Fuqua, when my teeth

14     got kicked out.

15          This is the one right here said Fuqua F-u-q-u-a,

16     and the other guy that was here the last time that was

17     the aggressor.  They had on his name, they had on his

18     uniform.  What is your name?  Is your name Fuqua?

19          THE COURT: What is your name, sir?

20          OFFICER JONES: My name is officer Jones, sir.

21     Our names are stitched on our shirts.

22          MR. JONES: Your Honor, I'm Derek Jones.  I'm

23     here on behalf of Frank Jones.

24          Your Honor, he is not a party in this case.  We

25     are here observing.  This gentleman is clearly deranged,

— 4 —

1    and we are concerned about he's going to make more

2    frivolous accusations against Fulton County law

3    enforcement officers.

4          He has been staring at us the whole time we have

5    been sitting here, Judge.

6          APPLICANT ROBINSON: That guy over there --

7          THE COURT:  Just hold on.  Yes, sir.  Go ahead.

8          MR. JONES:  Since I have been in here he has

9    been staring at us almost repeatedly.  He will turn away

10    for a bit.  He will come back and stare at us again.  He

11    is clearly deranged, Judge, and I'm afraid that there's

12    going to be another frivolous action against the Fulton

13    County deputy sheriffs.

14          THE COURT:  Who all are you investigating, sir?

15          PERSON IN AUDIENCE: Well, the current

16    investigation, Your Honor, is an open investigation and

17    there's also an administrative investigation that we are

18    not allowed to talk about those things until the matter

19    is closed.

20          THE COURT:  All right. So have you been in

21    contact with the Professional Standards Division,

22    counselor?

23          MR. JONES: Your Honor, as I understand it,

24    they will conduct their own investigation.  That is

25    something that is and must remain totally apart from any

1    criminal investigation, which there needs to be a

2    Chinese fire wall between those two investigations.  Any

3    compromise -- their investigations, for them to be

4    involved in this criminal case, it compromises this

5    criminal case if they are involved in this case.

6              THE COURT: Now, the criminal case only

7    involves deputy Fuqua; is that correct?

8              MR. JONES: Yes, that's correct, Your Honor,

9    who I do not represent.  And that's why I'm here up

10   until now as merely an observer status.  But when this

11   gentleman started pointing at my client and the Court

12   started asking names, I felt it was my duty to get

13   involved.

14             THE COURT: All right. Are you making

15   accusations against these two gentlemen that are

16   standing up?

17             APPLICANT ROBINSON:  No, sir, it's not an

18   accusation.  Out of all three of the officers, the one

19   said say Fuqua.  I asked that guy what his name was.  He

20   didn't say anything.  I asked him with the big lips, and

21   he didn't say anything.  Right there.  That guy right

22   there.  That's not no accusation, partner.  They caught

23   you dragging me by my shackles.  You're the one that was

24   dragging me by my shackles.  You're the one that had on

25   Fuqua, and you were dragging me by my shackles.  Look on

1      the tape.  The tape speaks a thousand words.  If this is

2      the guy that dragged me by my shackles, he said his name

3      was Fuqua, and it was on his name tag, Fuqua.  I can

4      read real good.  The one to his left, he said spell it.

5      Say Fuqua.  This is what -- them two.

6              THE COURT: Is there any surveillance photos of

7      these incidents?

8              PERSON IN AUDIENCE: Your Honor, we are

9      conducting an administrative investigation, and because

10     the investigation is still open we are not allowed to

11     speak on those investigations at all.  And Mr. Jones, as

12     Mr. Jones indicated, we would be barred from

13     participating in a criminal proceeding because our guys

14     that work for us, they're forced to give statements, and

15     they're forced to be honest, and forced to tell the

16     truth.  That separates them from a criminal proceeding.

17     So anything they would have given us, anything we

18     discover as a result of our investigation, wouldn't be

19     something that will be participating in in a criminal

20     proceeding. So they are separate.

21              Now at the conclusion of our investigation it

22     would be subject to open records, and then anyone could

23     subpoena them or do whatever they want to do with them.

24              THE COURT: Well, I understand your desire for

25     it to be kept separate but I'm faced with a he said he

                                    ─── 7 ───

1   said, and the reason I wanted to be privy to some of

2   this information would assist me in having a broader

3   picture of what may have happened.

4          And, you know, if, in fact, he had his teeth

5   knocked out, and he was treated for his teeth being

6   knocked out, and medical concerns, then that might arise

7   to the level of probable cause.  And the reason I'm

8   being so cautious is I realize that if I issue a warrant

9   against the deputy, I imagine he has to be suspended; is

10  that correct?

11         PERSON IN AUDIENCE: Based on what the charges

12  are.

13         THE COURT:  And so I was hopeful that we could

14  all be -- have information with regard to the internal

15  investigation because basically all I'm going to have

16  here is what the defendant and the alleged victim

17  testifying, and that's it.  I would assume that your

18  clients are not going to say a word because they don't

19  want to possibly incriminate themselves; is that correct?

20         MR. JONES: Well, Your Honor, I only represent

21  one of the --

22         THE COURT: Well, I would assume that he's not

23  going to say anything.

24         MR. JONES: I'm not sure at this point, Your

25  Honor.  I would have to consult with him on that.  We

1    are here on an observer status, at least I am.

2         Your Honor, and again, I am not privy to any

3    Internal Affairs report myself.

4         THE COURT:  Well, what I think we ought to do

5    is is let the infernal affairs report be exhaustively

6    completed, and then give it to the alleged victim under

7    the Open Records Act, and let's see what it says,

8    because if his teeth were out and he's treated for his

9    teeth being knocked out, and treated for other injuries

10   that may rise to the level of probable cause and allow

11   the warrant to be issued.

12        I mean, I don't know what happened, and I assume

13   that you all are -- and I know you can't talk about your

14   investigation -- I assume that you all are talking to

15   numerous witnesses, and people that were on duty, and

16   medical staff, and things like that at the jail; is that

17   correct?

18        PERSON IN AUDIENCE: That is correct, and I

19   think you're right on it, Your Honor, and I think his

20   application may be premature and probably should have

21   been filed after we finished.  But we are here so what --

22        THE COURT: How long do you think it will be

23   before you can disclose?

24        APPLICANT ROBINSON:  It has been 6-months.

25        PERSON IN AUDIENCE: I'm not sure.  It will be

1     soon.

2              APPLICANT ROBINSON:   They said that five

3     months ago -- four months ago, they said the same thing.

4              THE COURT: But I'm trying to be fair to

5     everybody.  I have told you that if your allegations are

6     true it's very serious, and needs to be addressed by the

7     justice system, and if your allegations are true then

8     it's something that cannot be tolerated.  I think that

9     everybody would benefit from an exhaustive investigation

10    that can be made public.  Yes, sir.

11             A DEPUTY SHERIFF:  Judge, permission to

12    approach with a document that maybe you may want to look

13    at?

14             THE COURT: Okay.

15             (Short pause.)

16             THE COURT:  All right.  This is a letter and I

17    will read it.  It's dated 8-17-16.  About William

18    Robinson signed by Betty Harper, dental assistant.

19             I, Betty Harper, giving a true statement on May

20    3, 2016, Mr. Robinson Williams was brought to the

21    medical floor at 4:10 p.m.  It was stated to me, being

22    that I was the dental assistant for that day, that Mr.

23    Robinson had been involved in an altercation with

24    another inmate in the holding tank.

25             The sergeant came over about 4:15 p.m. with

1    number eight and number nine in his glove identifying

2    that Mr. Robinson had his teeth knocked out.  Deputy R.

3    Fuqua was never seen in the designated area. Okay.

4    That's something I guess that your group will, in

5    internal affairs, will look into; is that correct, sir?

6              PERSON IN AUDIENCE: I'm familiar with that.

7              THE COURT:  All right.  So do you think we can

8    have a conclusion of the investigation, and make the

9    report public pursuant to any open records request by

10   the end of January?

11             PERSON IN AUDIENCE: Yes, sir.

12             THE COURT:  All right. So what I'm going to

13   tell you -- yes, sir.

14             APPLICANT ROBINSON: Your Honor, they are

15   submitting evidence.  I can't submit evidence.  All I

16   can do is point at the person that -- and the persons

17   that did this to me.  You say I'm staring at them.  I'm

18   catching flashbacks to when that man's foot was in my

19   face.

20             MR. JONES: You were staring at me, and I

21   wasn't in the jail that day.

22             THE COURT:  All right. All right.

23             APPLICANT ROBINSON:  Hold on.  Your Honor,

24   second, ever since this is going on gunshots have been

25   going on around my house.  All right.  I stay right down

1        the street from a police station. I feel there's a level

2        of intimidation going on.

3                THE COURT: All right. Let's go to the last

4        Thursday in January.  Does anybody know what that date

5        is?  Let's do 10:00 a.m. on the 26th of January,

6        10:00 a.m., and I will ask that you make your report

7        public in open court if the case is closed.

8        January 26th, everybody write this down.  That's

9        Thursday, January 26th.  We will have a hearing that day

10       at 10:00 a.m., courtroom 5-E.  All right.  You all have

11       a good day.  Thank you.

12               (Short pause.)

13               C E R T I F I C A T E

14

15   STATE OF GEORGIA:
     COUNTY OF FULTON:

16

17           I do hereby certify that the foregoing is
     a true, complete, and correct transcript of the proceedings
18   taken down by me in the case aforesaid.

19

20

21       This, the 17th day of March, 2017.

22                       /ss/Linda E. Haque

23                       _____
                         Linda E. Haque, CCR No. B-996
24                       RPR, Certified Court Reporter

25