## ATTACHMENT C

## (PLAINTIFF'S OUTLINE OF THE CASE)

a) **Summary of Plaintiff's Contentions**

During his initial time in the jail, jailers then placed Robinson in a restraint chair for many hours. Jailers then removed Robinson from the restraint chair and moved him into a padded room. Robinson's shoulder was injured during his initial time in the jail. Robinson believed that his arm was broken, and asked for medical attention. Eventually, jailers let Robinson out of the padded room and stated that they would take him to the medical unit.

Robinson waited patiently for the shift change so that the incoming jailers would take him to the medical unit to have his shoulder checked.  After shift change, a jailer appeared and Robinson believed he was going to be taken to the medical unit. The jailer grabbed Robinson by the shoulder, which caused Robinson pain. As a result, Robinson pulled away. The jailer who grabbed Robinson was Deputy Frank Jones. Jones testified that when Robinson began to stand, Robinson "janked away like in an aggressive manner," and therefore "we placed him on the ground and put handcuffs on him." Robinson does not recall what happened next because he lost consciousness.  The next thing Robinson remembers is being dragged on the floor by his ankles.

The process at the jail is that new arrestees are typically taken for a medical screening before they are dressed out to go to general population. Robinson did not go through a medical screening before being taken to the property room. Id. The property room is the location where inmates are dressed out after being processed in booking. Three jailers then stopped dragging Robinson and told him to get up and walk. Robinson attempted to do so, but he was in a great deal of pain. After a few steps, Robinson said that he could not walk and fell to the ground.

The jailers proceeded to drag Robinson, face down on the ground, into the property room of the jail. The three deputies then dragged Robinson into the shower area of the property room. The three deputies who dragged Robinson into the shower were Rafferty Fuqua, Markennis Jackson, and Frank Jones. There are no cameras in the shower area of the property room. Both Defendants know there are no cameras in that area of the jail.

After reaching the shower area, the Frank Jones slapped Robinson. At this point, Robinson's hands were handcuffed behind him and his feet were shackled. This attack angered Robinson and he said "my old lady his harder than you." After Robinson said that, the Jones punched Robinson. This prompted Robinson to call Jones a coward for punching another person who is handcuffed. At that point, Jones dragged Robinson into the shower and began punching and tasing him. While in the shower area, Robinson was punched and kicked by Frank Jones. Robinson was kicked twice in the face by

Frank Jones. Frank Jones punched was a closed fist. Jones hit Robinson and, at that point, Robinson felt his teeth crush down. The assault continued after that. Id.

Jones did not have a taser assigned to him on May 3, 2016, but Fuqua did. Based on the taser logs, the first time the taser was activated was 7:38:08 a.m. Correcting for the time discrepancy, the taser would have been deployed at 7:29:38 a.m. The timestamp on the video surveillance shows that Robinson was dragged into the property room at 7:29 a.m. Frank Jones was the officer who used the taser. "Frank Jones was tasering me. That was not Fuqua at all. That was not Fuqua. That was Frank Jones with the taser." Robinson has a clear recollection of the facial appearance of each Defendant. Robinson did not do anything to justify being tased. Robinson did not show any aggression, and the tasing was not preceded by a command for Robinson to do anything.

During the assault, Markennis Jackson and Defendant Saunders were standing nearby. Saunders did not say anything, but appeared to there as a sort of enforcement. "If I would have responded physically, then, you know, Saunders would have jumped in and Jackson would have jumped in." A taser is audible when it is discharged. During the incident with Robinson, Saunders was close enough to hear a taser being deployed.

During the attack, two gold teeth Robinson had in his mouth were dislodged. The gold teeth were not temporary caps or a mouth piece. When placed in his mouth, Robinson's

front teeth were shaved down and the gold teeth were glued in place. When Robinson's gold caps fell out, one of the officers remarked "we got trophies." Saunders was present during the attack and Robinson could see Saunders during the attack. Saunders acknowledges that he would have been able to hear a taser being activated from the place where he was getting Robinson's clothes. Robinson was handcuffed during the attack. At some point, Robinson lost consciousness. Robinson was then dragged from the property room by four deputies.

    b)    **Relevant Rules, Regulations, Statutes, and Case Law**

Bozeman v. Orum, 422 F.3d 1265, 1272 n.11 (11th Cir. 2005), abrogated by Kingsley v. Hendrickson, 576 U.S. 389 (2015)

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014)

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)

Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998)

Hadley v. Gutierrez, 526 F.3d 1324, 1330–31 (11th Cir. 2008)

Johnson v. White, 725 F. App'x 868, 878 (11th Cir. 2018)

Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000)

Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)

Whitley v. Albers, 475 U.S. 312, 321 (1986)

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)

    c)    **Damages and Other Relief Sought**

1. <u>Compensatory Damages</u>: The Plaintiff will seek an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury. Compensatory damages in this case are available to compensate Plaintiff for his emotional distress, and pain and suffering. Compensatory damages are available to plaintiffs in civil rights cases under the common law, as applied to such matters in Federal Court. *See generally Carey v. Piphus*, 435 U.S. 247, 254-55, 98 S.Ct. 1042, 1047-48, 55 L.Ed.2d 252 (1977); *Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990).

2. <u>Special Damages</u>: Plaintiff does not seek special damages.

3. <u>Punitive Damages</u>: The Plaintiff expects to establish that the Defendant acted willfully and with reckless disregard for his federally protected rights under the Fourth Amendment. Plaintiffs alleging constitutional violations such as false arrest may recover punitive damages from an individual defendant. See generally, *Smith v. Wade*, 461 U.S. 30, 51 (1983). The Plaintiff will seek an award of punitive damages in an exact amount to be determined by the enlightened conscience of the jury and expects to seek an amount proportional to the jury's award of special and compensatory damages.

4. <u>Prejudgment Interest</u>: Plaintiff will seek recovery of prejudgment interest. *See e.g. Loefler v. Frank*, 486 U.S. 459 (1988).

5. <u>Attorney's Fees and Costs</u>: Plaintiff seeks attorneys' fees and costs under 42 U.S.C. § 1988.